AUSA:    C. Barrington Wilkins          Telephone:  (313) 226-9621
AO 91 (Rev. 11/11)  Criminal Complaint          Special Agent:          Bradley Cioma          Telephone:  (313) 919-1454

# UNITED STATES DISTRICT COURT
for the

### Eastern District of Michigan

United States of America
v.

CORTEZ TRAHON MCKINLEY

Case No.

Case: 2:21−mj−30490
Assigned To : Unassigned
Assign. Date : 10/18/2021
Description: RE: SEALED MATTER
(EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 28, 2021 _____ in the county of _____ Wayne _____ in the
_____ Eastern _____ District of _____ Michigan - SD ___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C.§ 841 | Possession with Intent to Distribute Controlled Substances |
| Title 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Controlled Substances. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
*Complainant's signature*

 Bradley Cioma, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
*Judge's signature*

Date:  October 18, 2021

City and state:  Detroit, Michigan

 David R. Grand, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bradley Cioma, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.    I am a Special Agent with the FBI, and have been since May of 2017. I am assigned currently to the FBI Detroit Division's Strike Force Group 1. Prior to working at the FBI, I was a police officer for six years in Plymouth Township, Michigan. I have participated in training related to and conducted dozens of investigations of federal and state violations, including crimes of violence, firearms, and drug trafficking.

2.    The statements contained in this Affidavit are based on my experience as a special agent, information provided by police officers, other agents of the FBI, and other law enforcement personnel, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

3.    The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation.

### Probable Cause

4.    I am currently investigating Cortez Trahon MCKINLEY, date of birth xx/xx/1989, for violations of federal law, specifically, 21 U.S.C. § 841(a)(1)

Possession with Intent to Distribute Controlled Substances and 21 U.S.C. § 846
Conspiracy to Possess with Intent to Distribute Controlled Substances.

  5. On September 28, 2021, detectives from the Michigan State Police
were observing the public areas of the Greyhound bus station in Detroit, Michigan.
At approximately 12:55 pm passengers were boarding a bus that was headed to
southern states.

  6. A male subject wearing a yellow construction vest exits a Chevrolet
Trailblazer that pulled up in front of the building from the rear driver's side. This
subject quickly walked into the bus station carrying a bag and looked around. That
subject was then observed walking towards the window of the Greyhound Bus
Station that faces the northside of the building where passengers are dropped off
and walk into the station. The male then was observed motioning to someone
outside with his hands. Another male wearing a gray shirt is then observed exiting
the same Trailblazer from the passenger side of the vehicle, gathers some
belongings from the inside of the vehicle and is observed walking into the
Greyhound bus station carrying a gray duffle bag.















The male wearing the yellow construction vest then walked towards the south side

of the bus station and exited to board the bus. The bus was already boarded and the

last-minute arrival increased Detectives suspicion as this is a common tactic used

by narcotics traffickers to limit their time to be observed by law enforcement. The

male wearing the gray shirt was now observed by Detectives walking into the

Greyhound Bus Station. Outside Detectives advised over the radio that the male in

the gray shirt was observed exiting the same vehicle as the subject in the yellow

construction vest.  Detectives then attempted to make contact with the male

wearing the yellow construction vest who was observed carrying a bag. That male

subject turned around, set his bag down near the exit door from the interior of the

bus station to the exterior where passengers load and said he was going to go get a

ticket. It appeared to Detectives that the subject, later identified as Steven VINING

JR., was attempting to distance himself from the bag he arrived at the station

carrying and was attempting to avoid contact with Detectives. Detectives walked

with the subject and attempted to speak with him as he walked to the ticket

counter. VINING JR. displayed nervous behavior, kept repeating the same

question and was looking all around the bus station. It appeared VINING JR. had a

ticket in his hand. VINING JR. was asked why he left his bag at the exit door from

the station where passengers loaded onto the bus. VINING JR. did not have an

answer for why he left his bag at the exit door and avoided answering the question.

VINING JR. was asked why he needed a ticket when he had one in his hand,

which was visually confirmed by Detectives. He claimed he needed to get another

ticker because that one was not accepted. Detectives then detained VINING JR.,

due to him leaving his bag behind and his overall nervous behavior which is

consistent with subjects who are attempting to traffic narcotics when they come in

contact with law enforcement. VINING JR. was identified and was asked if he had

any illegal narcotics inside his bag and he advised approximately 5 pounds of

Marijuana. Detectives then took VINING JR. and the bag he arrived with to the baggage claim area.

7.     As Detectives made contact with VINING JR. they observed that the man who walked in wearing a gray shirt, which detectives on outside of the terminal confirmed also arrived in the Trailblazer, making contact with VINING JR. The male in the gray shirt then turned around and began to exit the bus station, looking to his rear as he exited. Detectives attempted to make verbal contact with this male wearing the gray shirt and he continued to walk away; it appeared he was acting as if he could not hear the Detectives. The male in the gray shirt appeared nervous to Detectives and verbally told them that he forgot his ID and would be back. This appeared to be a distraction and an attempt to evade police. Detectives asked the male in the gray shirt to stop and asked him to walk back into the station. This subject asked what this was about, and Detectives asked him if he was traveling with anyone today. He stated he was not traveling with anyone, which Detectives knew was not true since outside Detectives observed him exit the same vehicle as VINING JR. Detectives asked him if he was on parole, probation or had any warrants for his arrest. He advised that he had a warrant for domestic violence. The male was handcuffed at that time and was identified as Cortez Trahon MCKINLEY. MCKINLEY did have warrants for his arrest and was found to be in possession of fourteen Oxycodone tablets, without a prescription.

8.      A Michigan State Police Narcotics Canine was on scene, and it conducted a sniff of the bag and gave a positive indication on the bag in the possession of VINING JR. A search was then conducted on the bag and located inside was approximately 4 kilograms of suspected illegal narcotics in vacuum sealed packaging and 4 bags of suspected illegal narcotics in plastic bags.  In my training and experience, this amount of illegal narcotics exceeds an amount consistent with personal use, and is instead consistent with narcotics trafficking. A TruNarc scan was done on all four packages of the suspected illegal narcotics in the vacuum sealed bags, and all indicated Methamphetamine. The four packages were weighed separately: the first package weighed 477 grams, the second package weighed 485 grams, the third package weighed 480 grams and the fourth package weighed 485 grams. Collectively these packages weighed 1,927 grams. A TruNarc scan was done on one of the other separate packages that was in a plastic bag, and it indicated methamphetamine. That package weighed 229 grams. Leaving a total of 2,156 grams of Methamphetamine taken from the bag that VINING JR. was carrying. A Reagent test was done on the three separate bags of suspected illegal narcotics and all tested positive for Fentanyl. The packages weighed 134 grams, 103 grams and 48 grams respectively, leaving a total of 285 grams of fentanyl taken from the bag that VINING JR. was carrying.













9.      VINING JR. was transported to the Michigan State Police Detroit

Detachment and was interviewed by Michigan State Police Detective Matthew

Kiser. VINING JR. was advised of his Miranda rights and consented to an audio

recorded interview. During the interview he admitted to transporting illegal

substances in exchange for clearance of $25,000 in gambling debt for a family

member. VINING JR. advised he was taking the package to Columbus, Ohio, acknowledging he knew he was not supposed to leave the state while he was on felony probation for a weapons offense and acknowledged he had a prior felony drug case out of state. VINING JR. stated he knew it was wrong to try to traffic illegal substances.

10.    MCKINLEY was also transported to the Michigan State Police Detroit Detachment and was interviewed by Michigan State Police Detective Matthew Kiser. MCKINLEY was advised of his Miranda rights. During the interview he admitted to possession of the Oxycodone tablets without a prescription. He claimed they were for personal use and stated he takes responsibility for everything he had in his possession. He claimed to have no knowledge of the very large amount of illegal narcotics possessed by VINING JR. He reluctantly admitted that he did know VINING JR. and referred to him as Steve. He stated that he had met Steve in a club and discussed a job opportunity in West Virginia. He stated that Steve told him to buy a Greyhound Bus ticket at 7-11 and then MCKINLEY's brother drove them both to the Greyhound Bus Station.

## Conclusion

9.    Based on the above information, probable cause exists to believe that Cortez Trahon MCKINLEY, violated 21 U.S.C. § 841(a)(1), Possession with Intent to

Distribute Controlled Substances and 21 U.S.C. § 846 Conspiracy to Possess with

Intent to Distribute Controlled Substances.

Respectfully submitted,

Bradley Cioma, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable David Grand
United States Magistrate Judge

Dated: _____ October 18, 2021